**Garry L. KIRK, Appellant (Defendant),**

v.

**Kathy Mae KIRK, Appellee (Plaintiff).**

No. 45S03–0205–CV–287.

Supreme Court of Indiana.

June 21, 2002.

Gregory S. Reising, Gary, IN, Attorney for Appellant.

Jason L. Horn, Munster, IN, Judy M. Tyrrell, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

After five years of working with experts to evaluate eleven-year-old G.L. and her divorced parents, the trial court honored the child's wish to remain in the home environment she had always known, but also continued to try to stop the custodial mother's efforts to destroy the father's relationship with G.L.

The Court of Appeals reversed and ordered custody awarded either to the father or a neutral third party. Because the trial judge was better situated to evaluate the best interests of this child, we affirm the trial court.

### Facts and Procedural History

Kathy Mae Kirk filed for divorce from Garry Kirk in 1990, before their daughter G.L. was a year old. Mrs. Kirk was awarded custody of the child, with Mr. Kirk to have visitation. G.L. has lived with her mother since then, near her maternal grandparents, two uncles, an aunt, and seven cousins. She does well in school and participates in activities including band, cheerleading, student council, the student newspaper, and church choir.

Mr. Kirk transferred to Rockford, Illinois, shortly after the divorce but has returned to Indiana periodically to maintain contact with G.L.

In 1995, Mrs. Kirk accused Mr. Kirk of sexually molesting G.L. and petitioned the court to terminate his visitation rights. In February 1996, Mr. Kirk petitioned for modification of the custody arrangement.

The parties were regularly locked in a litigation struggle over the next five years. The court monitored the family situation and sought to establish regular visitation between Mr. Kirk and G.L. Mrs. Kirk repeatedly frustrated these reunification efforts. (*See, e.g.,* Appellant's App. at 55,

72, 84, 87, 106, 119, 152.) Five psychologists, two social worker/therapists, a guardian ad litem and a psychiatrist provided reports on the family dynamics and personalities. (*Id.* at 34, 68, 50, 100, 118, 130, 163, 167, 173.)

The picture that emerged is not flattering to either parent. Mr. Kirk was diagnosed as recently as October 2000 as having a "chip on his shoulder" and being quick to anger (as the court observed firsthand at trial). (T.R. at 47; Appellant's App. at 120, 169.) He is "narcissistically disturbed" and at least as concerned with his own image and presentation as he is with his daughter's well-being. (Appellant's App. at 169.) At trial, he dismissed the diagnosis of narcissism as "blame sharing ... to appear politically correct." (T.R. at 57.) He acknowledged having "a fireball anger" but described this as "not something that would be out of the ordinary." (*Id.*)

Mrs. Kirk has her own issues. She was diagnosed as "severely narcissistically disordered" and unknowingly "involved in manipulative, deceitful and exploitative behaviors in an effort to preserve her pathological enmeshment with her daughter." (Appellant's App. at 168.) Taken together, these findings confirm a 1998 psychologist's report that "there is no real evidence that any of the parties involved has any insight into his or her own pathological misbehaviors beyond minimal lip service. The major obstacle in this case will be getting these individuals on the same page." (*Id.* at 123.)

It is not surprising, therefore, that G.L. is "troubled and confused." (*Id.* at 169.) Although none of the experts have credited the molestation charge as true, G.L. firmly believes in it, and suffers anxiety over the possibility of further molestation.[1]

---

1. In December 2000, G.L. told Judge Bona-    ventura, "I know he did it. I remember it.

She has occasionally been so upset at the prospect of visiting her father that she has soiled herself and become hysterical.

A psychiatric report in October 2000 concluded that although "[b]oth parents suffer from serious character pathology ... a resolution of any kind, that includes some degree of finality, is likely to improve the parents' behavior and thus the life for [G.L.]." (*Id.* at 168.) The psychiatrist recommended that G.L. continue to reside with Mrs. Kirk unless that arrangement proved "untenable," in which case Mr. Kirk should move to G.L.'s neighborhood to take over her physical custody in an environment that would provide "a modicum of continuity." [2] (*Id.* at 170.)

Judge Bonaventura interviewed G.L., who made it clear that she wanted no contact with her father. (Interview Transcript at 16, 21–22, 26.) Only when pressed did the child reluctantly accept the notion of limited, supervised visitation. (*Id.* at 22.)

In January 2001, the court denied the custody modification petition and set new visitation guidelines affording Mr. Kirk a minimum of three hours each weekend, supervised by the maternal grandparents, for an eight-week period, followed by at least four hours per weekend, unsuper-

vised but in a public setting. The court ordered both parents and G.L. to participate in family counseling, with the possibility of eventual overnight visitation contingent upon a therapist's recommendation. The court formally ordered both parents not to speak negatively about each other in G.L.'s presence.[3]

Mr. Kirk appealed, and the Court of Appeals held that the trial court abused its discretion by leaving legal and physical custody of G.L. with Mrs. Kirk "despite overwhelming evidence that their relationship was harmful to G.L.[']'s mental health." *Kirk v. Kirk,* 759 N.E.2d 265, 270 (Ind.Ct.App.2001). It reversed and remanded with instructions to give Mr. Kirk legal custody and either Mr. Kirk or a neutral third party physical custody. *Id.* It also ordered a re-determination of visitation rights. *Id.* at 271. We granted transfer.

### Standard of Review for Custody and Visitation Judgments

■ Under Indiana Code Ann. § 31–17–2–21 (West 2001), a court may not modify a child custody order unless modification is in the child's best interests and there is a substantial change in one of several factors that a court may consider in initially deter-

---

Nobody can ever change my mind, because it happened to me. I remember it." (Interview Transcript at 20.) When asked by the court, "[Y]ou don't think that your dad would sexually abuse you?", she replied, "I think he would, yes. If he's capable of doing it then, I think he's capable of doing it now." (*Id.* at 19.)

**2.** The psychiatrist recommended that Mr. Kirk be awarded "sole custody," (Appellant's App. at 170), which in light of his recommendation that G.L. reside with Mrs. Kirk we take to mean legal, not physical, custody.

**3.** Mr. Kirk reacted to the court's ruling by creating an anonymous web site to disparage the trial judge, including several irrelevant

and/or unsubstantiated verbal barbs. Such a campaign only undermines his effort to portray himself as the more responsible, mature parent.

On the web site, Mr. Kirk invokes Bob Dylan's ballad about Rubin "Hurricane" Carter in excoriating the custody proceeding as a "pig-circus." On the contrary, we commend Judge Bonaventura for staying the course for five years to do her best for a child torn between warring parents. A family court judge's task is not easy, but it is terribly important, and at the end of the day those judges "remember children's faces best." *See* Bob Dylan, "Long Time Gone."

mining custody.[4] In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating the existing custody should be altered. Under Ind.Code Ann. § 31–14–14–2 (West 2000), "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child."

■ We review custody modifications for abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind.1993) (affirming trial court judgment shifting primary custody of children to father). We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.* at 179 (citing Ind. Trial Rule 52(A)).

We explained the reason for this deference in *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965) (footnote omitted):

While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

■ Therefore, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal."[5] *Id.* (citations omitted).

## This Child's Best Interests

The psychiatrist who most recently evaluated this struggle between two battle-hardened parents observed that because all the alternatives here are less than ideal,

4. These factors are:
   (1) The age and sex of the child.
   (2) The wishes of the child's parent or parents.
   (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
   (4) The interaction and interrelationship of the child with:
      (A) the child's parent or parents;
      (B) the child's sibling; and
      (C) any other person who may significantly affect the child's best interests.
   (5) The child's adjustment to the child's:
      (A) home;
      (B) school; and
      (C) community.
   (6) The mental and physical health of all individuals involved.
   (7) Evidence of a pattern of domestic violence by either parent.
   (8) Evidence that the child has been cared for by a de facto custodian. . . .
   Ind.Code Ann. § 31–17–2–8 (West 2001).

5. This is not to say that the circumstances of a custody or visitation case will never warrant reversal. *See, e.g., Kuiper v. Anderson*, 634 N.E.2d 556, 560 (Ind.Ct.App.1994) (although many of mother's decisions were "less than ideal," trial court erred in finding circumstances sufficiently changed to justify custody modification); *Ward v. Ward*, 611 N.E.2d 167, 171 (Ind.Ct.App.1993), *transfer denied* (trial court erred in concluding that father failed to show changed circumstances justifying custody modification); *Brown v. Brown*, 463 N.E.2d 310, 311, 313 (Ind.Ct.App.1984) (reversing transfer of custody of two daughters from father to mother).

"we might need to substitute the hope for the 'least detrimental alternative' as proxy for 'the best interests of the child.'" (Appellant's App. at 167.) He went on to describe this as "a case where one can easily get buried in detail and minutia that might overwhelm any decision making process." (*Id.*) We agree, noting that it is particularly difficult for a reviewing court to second-guess a situation that centers on the personalities of two parents battling for control of a child.

Courts certainly should not reward parents who refuse to cooperate in the court's efforts to reunify a child with another parent. Nonetheless, the trial judge may well have believed:

> [C]hildren will normally prosper and mature ... under a standard of consistency better than they will otherwise, even though at any given point in time the noncustodial parent may appear capable of offering "better" surroundings, either emotional or physical. In the larger sense, the stability in surroundings, schooling, relationships, authority figures, daily routine, economic circumstances, etc. constitute a substantial determinant in assessing the statutorily enumerated factors relevant to a determination of the best interests of the child.

*Kuiper v. Anderson,* 634 N.E.2d at 558.

■ G.L. has no family in Rockford except a father whom she fervently wishes to avoid. Every aspect of her life would be disrupted should her father obtain custody. Her mother may have caused the estrangement, but the trial court's necessary focus was on what is best for G.L. under the totality of circumstances.

Like the Court of Appeals, we might have arrived at a different conclusion, such as awarding custody to a neutral third party to allow G.L. to remain in her hometown environment while developing a more positive attitude toward her father. The trial court was better situated, however, to determine whether an appropriate third party was available and, if so, to weigh that alternative. We cannot say from the record that the trial court clearly erred in deciding to leave G.L. with her mother while continuing to exert the court's authority to re-establish G.L.'s relationship with her father.

### Conclusion

We affirm the order of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.