Janine E. NIENABER, Appellant–
Respondent,

v.

In the Matter of the MARRIAGE
OF Joseph W. NIENABER,
Appellee–Petitioner.

No. 15A04–0209–CV–443.

Court of Appeals of Indiana.

April 30, 2003.

Alison T. Frazier, Eckert Alcorn Goering & Sage, LLP., Madison, IN, Attorney for Appellant.

John L. Kellerman, Kellerman Law Office, Batesville, IN, Attorney for Appellee.

**OPINION**

FRIEDLANDER, Judge.

The marriage of Joseph W. and Janine E. Nienaber was dissolved by a March 19, 1999 decree of dissolution. Janine was awarded custody of the parties' two minor children and Joseph was granted visitation rights and ordered to pay child support. Thereafter, Joseph sought a modification of custody and an order finding Janine in contempt of the dissolution decree. Joseph was successful in those endeavors, and Janine now appeals, presenting the following restated issues for review:

1. Did the trial court apply incorrect criteria in making the determination to modify custody?

2. Did the trial court err in modifying child support by failing to apply the income shares model contained in

the Indiana Child Support Guidelines?

We affirm.

Because the issues presented are fact sensitive, we will provide a detailed recitation of the facts, viewed in a light most favorable to the ruling. When Joseph and Janine divorced, their two children, J.N. and J.I.N., were ten and eight years old, respectively. Dr. Richard Lawlor performed a custody evaluation to assist the court in making a custody determination. Dr. Lawlor noted that both children exhibited significant behavioral problems. He reported that "[n]either parent presents as particularly effective with regard to dealing with the significant behavior problems each of the children has." *Appellant's Appendix* at 17. With respect to Janine, he reported that there were interactions in which she was "yelling and screaming" at the children, during which times she was "clearly verbally abusive" and her parenting was "ineffective". *Id.* He stated that, at times, her interactions with the children were "psychologically abusive." *Id.* Joseph's parenting was described as "not abusive, but not effective either." *Id.* Dr. Lawlor recommended, "tentatively, and with reservations," *id.*, that physical custody be awarded to Janine. The court accepted that recommendation and Janine was awarded custody of the children. Joseph was ordered to pay child support in the amount of $184.00 per week, with payments to be made through an income withholding order. Joseph was granted regular, weekly visitation rights. With respect to those rights, the court ordered, "[t]he support shall abate by one-half during the extended visits of seven (7) consecutive days or more, and Wife shall pay back to Husband a sum of money equal to the abatement of one-half of the support after she receives it for those periods of time when he has extended visitation." *Appellant's Appendix* at 21.

The next three years were marked by a general deterioration of the children's situation in Janine's home. J.N. in particular did not do well. He performed poorly in school, failing the sixth grade. He also experienced frequent disciplinary problems.

Meanwhile, Janine persisted in attempting to discipline the children primarily through yelling. According to Joseph, Janine did not engage in "just normal screaming." *Transcript, Vol. I* at 9. Rather, she was prone to "screeching at the top of her voice for long periods of time." *Id.* In fact, Joseph worked with a neighbor of Janine's who was so disturbed by Janine's yelling that she asked him, "when are you going to file your motion to change custody", and then later told him "I hope you win that thing." *Id.* at 8. Janine, who is afflicted with multiple sclerosis (MS), admitted "I do ... my share of screaming because I don't have [the] ability to walk and run and grab and chase." *Id.* at 59. Janine's difficulty in controlling J.N. was reflected in the fact that she had called local law enforcement officials on several occasions because she was unable to control him. Those calls were prompted when J.N. committed acts including curfew violations, theft, arguments with Janine and J.I.N., and "being out with ... the wrong type of individual." *Id.* at 9. The relationship between J.N. and his mother was such that J.N. constantly threatened to run away if Joseph forced J.N. to return to Janine's after visiting at Joseph's house. For some time, J.N. had expressed a strong preference to live with his father. Joseph testified that J.N. had been "begging [him] for the last two years to file this motion for change of custody." *Id.* at 4. J.I.N. also had expressed a desire to live with her father.[1]

1. According to Joseph:

Well, the problem with trying to return

The aforementioned problems were exacerbated by what both Janine and Joseph conceded was a total breakdown in their ability to effectively communicate with each other. Joseph described the situation as follows:

> No, there's, no there's never been any communication between us since the separation back in '97 or '98 other than, I mean as soon as we get on the telephone together, it's the voices raise, the anger persists and either she'll slam the phone down or I'll end the conversation. I mean there's no talking between us.

*Id.* at 7. To illustrate the point, Joseph was asked upon cross-examination why he had not informed Janine that, on one occasion, J.I.N. had cut herself with scissors while staying with Joseph. He responded,

> All I know is that if I call her and talk to her and I would have told her that, I would have been harangued as being a worthless piece of cow shit whatever and then totally irresponsible, less than irresponsible and I'm not going to sit there and listen to that crap.

*Id.* at 34. Janine and Joseph's acrimonious relationship caused other difficulties for the children. Janine refused to keep Joseph informed about the children's school and extracurricular activities. When he was in the first grade, J.N. was diagnosed with Attention Deficit Disorder. As a result, he took the prescription medication Aderal. Janine refused to send J.N.'s medicine with him when he went to stay at Joseph's house. Joseph testified that he was unable to obtain any medication that J.N. could take while he was at his father's house because "Aderal is so tightly ... controlled that they ... can issue one prescription with no refills and until that one prescription has run out, they can't give out another prescription." *Id.* at 6.

Apparently because of her medical condition,[2] Janine had begun to experience difficulty driving. She acknowledged that she sometimes had to use her hands to move her foot from the brake to the accelerator and vice versa. She was involved in several minor accidents in the first eight months of 2002. Notwithstanding the effects of her disability, Janine continued to drive with the children in the vehicle.

As detailed above, the decree provided that if the children visited with Joseph for more than seven consecutive days, his support obligation would abate by one-half during such time, and Janine would pay back that amount to Joseph. During each of the first four summers after the dissolution decree was entered, the children stayed with Joseph for an extended period of time, thus triggering Janine's abatement obligation. Janine failed to comply in each instance. In order to obtain the abatement, Joseph was forced to take Janine to court all four times.

---

> them to their mother is that they don't want to go back. I mean they, some, I'm not going to say every time, but most of the time they threaten, J.N. anyway, threatens to run away, go hide in the woods or what have you. So I've got to track him down, get him ready and make sure he's got all his stuff together and get him back to school. *Id.* at 4.

2. MS is a progressive, disabling illness that affects nerve cells in the brain and spinal cord. Under normal conditions, these nerve cells are surrounded by an insulating sheath made of fatty myelin, which speeds the passage of nerve impulses. In MS, this myelin sheath is inflamed or damaged, disrupting nerve impulses and leaving areas of scarring (sclerosis). The disruption of nerve signals within the brain and spinal cord causes a variety of symptoms that can affect vision, sensation, and body movements. Aetna InteliiHealth *available at http://www.intelihealth.com /IH/ihtIH/WSIHW000/8320/24259/195804.html?d=dmtHealthAZ* (April 11, 2003).

In response to the aforementioned circumstances, on April 22, 2002, Joseph filed a petition to modify custody, asking the court to award primary physical custody of the children to him. Joseph also filed a motion for rule to show cause, alleging that Janine had again failed to comply with the provision of the dissolution decree that ordered her to remit to him the child support abatement. On August 19, 2002, the trial court granted Joseph's petition in both respects. The court awarded primary physical custody to Joseph, ordered Janine to assign to Joseph all social security disability benefits received by the children. The court ordered Janine to pay child support in the amount of $40.00 per week.[3] The court also found Janine in contempt and ordered her incarceration for ninety days unless she purged herself of the arrearage attributable to her failure to pay the child support abatement. Finally, the court ordered her to pay $600.00 of Joseph's attorney fees.

1.

■ Janine contends that the trial court applied incorrect criteria in making its determination to modify custody. Janine's primary complaint with the trial court's order centers upon the legal standard applied. She notes that the court based the modification upon its determination "[t]hat a modification of custody is in the best interest of the children and there has been a substantial and continuing change in circumstances." *Appellant's Appendix* at 31. She notes also that modifications in child custody are controlled by Ind.Code Ann. § 31–17–2–21 (West, PREMISE through 2002 1st Special Sess.). The criteria set out in that statute include "a substantial change in one (1) or more of the factors that the court may consider under section

8", I.C. § 31–17–2–21(a)(2), and not "a change in circumstances" as cited in the trial court's findings in the instant case. Janine contends that under the correct standard, a modification of custody was not appropriate.

Neither party asked the trial court to enter findings under Indiana Trial Rule 52. The trial court nevertheless entered a number of findings sua sponte, as authorized by T.R. 52. When such a judgment is entered, we will affirm on any legal theory supported by the evidence. *Kanach v. Rogers*, 742 N.E.2d 987 (Ind.Ct. App.2001). We will set aside the findings only if they are clearly erroneous. *Id.* "A finding is clearly erroneous only if the record contains no facts to support it either directly or by inference, and a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.* at 989.

■ I.C. § 31–17–2–21 provides that a court may not modify a child custody order unless (1) modification is in the child's best interests and (2) there is a substantial change in one of several factors that a court may consider in initially determining custody. Those factors include the following: (1) The child's age and sex; (2) the wishes of the child's parent or parents; (3) the child's wishes, with more consideration given to the wishes of a child who is at least fourteen years old; (4) the child's interaction and interrelationship with his or her parents, siblings, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to his or her home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or family

---

**3.** The court also provided, "Social Security Disability Benefits received on behalf of the children from [Janine's] account shall be credited toward her support obligation." *Appellant's Appendix* at 33.

violence by either parent; and (8) evidence that the child has been cared for by a de facto custodian. I.C. § 31–17–2–8 (West, PREMISE through 2002 1st Special Sess.). Both parents are presumed equally entitled to custody when the initial custody determination is made. *Kirk v. Kirk,* 770 N.E.2d 304 (Ind.2002). A petitioner seeking subsequent modification, however, bears the burden of demonstrating that the existing custody should be altered. *Id.* Ind.Code Ann. § 31–14–14–2 (West 1998) provides, "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child."

■■■ We accord "latitude and deference" to a trial court's decisions concerning modification of custody, *Kirk v. Kirk,* 770 N.E.2d at 307 (quoting *In re Marriage of Richardson,* 622 N.E.2d 178, 178 (Ind.1993)), and employ an abuse-of-discretion standard when reviewing such a ruling. *Kirk v. Kirk,* 770 N.E.2d 304. We reverse modification determinations only when they are clearly erroneous; we will not substitute our judgment for that of the trial court if any evidence or legitimate inferences support its judgment. *Id.* "Therefore, '[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Id.* at 307 (quoting *Brickley v. Brickley,* 247 Ind. 201, 210 N.E.2d 850, 852 (1965) (citations omitted)).

Janine contends that the trial court erroneously applied the test applicable to the pre–1997 amendment form of Ind.Code Ann. § 31–1–11.5–22(d), which was the predecessor to the current I.C. § 31–17–2–21. To be sure, the language in paragraph 1 of the trial court's modification order parrots language from the repealed standard. This is not to say, however, that such renders the modification clearly erroneous. In *Kanach v. Rogers,* 742 N.E.2d 987, we discussed the relationship between the former and current standards. We noted that under the current statute, the trial court may not modify a child custody order unless modification is in the child's best interests *and* unless in making its determination, the court considers the factors listed under I.C. § 31–17–2–8. *Id.* Further, we have interpreted I.C. § 31–17–2–21 to require that a modification must be accompanied by a finding that there has been a substantial change in one or more of the statutory factors listed in I.C. § 31–17–2–8. *Id.* Compare this with the standard for modification under the former statute, which required a substantial and continuing change in the circumstances in the custodial parent's home, that were of such a decisive nature that the existing custody order was unreasonable and modification was necessary for the child's welfare. *See Ward v. Ward,* 611 N.E.2d 167 (Ind.Ct.App.1993), *trans. denied.* Thus, for purposes of our discussion in the instant case, the primary difference between the former and current statutes is that the former provision focused upon substantially changed "circumstances", while the latter focuses upon substantial changes in a list of statutory "factors."

We are not inclined to focus on the terminology employed by the trial court and ignore the substance of its order. Although using the term "circumstances," the court entered findings with respect to at least three of the "factors" listed in I.C. § 31–17–2–8. Those include the children's wishes to live with Joseph, Janine's inability to maintain discipline and control with respect to J.N., and J.N.'s poor performance in school. It is therefore apparent to this court that the trial court did indeed consider the appropriate "factors," as required by I.C. § 31–17–2–21. Not only did

the court cite three of those factors in its findings, but the appellate materials reflect that evidence was presented concerning most, if not all, of the *other* factors listed in I.C. § 31–17–2–8. Moreover, in *Kanach v. Rogers*, 742 N.E.2d 987, we rejected the argument that the court must specifically identify which of the aforementioned factors were substantially changed. To the extent that Janine's argument represents a request to reconsider that holding, we decline.

In summary, all that is required to support modification of custody under I.C. § 31–17–2–21 is a finding that a change would be in the child's best interests, a consideration of the factors listed in I.C. § 31–17–2–8, and a finding that there has been a substantial change in one of those factors. The trial court's order included a finding that a change would be in the children's best interests, and a finding that there was a substantial change in "circumstances." *Appellant's Appendix* at 31. The transcript of the hearing and the modification order itself reflect that the court considered the factors listed in I.C. § 31–17–2–8, so we refuse to elevate form over substance with respect to the use of the term "circumstance" rather than "factor." Moreover, the record supports the determination that there was a substantial change with respect to at least one of the factors listed in I.C. § 31–17–2–8.[4] A substantial change in one is enough to support modification. *See Kanach v. Rogers*, 742 N.E.2d 987. The court's terminology was outdated, but its decision-making process and the substance of that decision comply with current law. The court did not abuse its discretion in ordering a modification in custody.

2.

◼ Janine contends that the trial court erred in modifying child support because, in calculating support, it failed to apply the income shares model contained in the Indiana Child Support Guidelines.

◼ Our standard of reviewing child support awards is well settled. We begin with the understanding that support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines (the Guidelines). The Guidelines apportion the cost of children between the parents according to their means. This approach is based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Fields v. Fields*, 749 N.E.2d 100 (Ind.Ct.App. 2001), *trans. denied.* A calculation of a child support under the Guidelines is presumed to be valid. *Id.* We will not reverse a support order unless the determination is clearly against the logic and effect of the facts and circumstances. *Id.* When reviewing a child support order, we do not revisit weight and credibility issues and confine our review to the evidence and reasonable inferences favorable to the judgment are considered. *Id.*

Janine contends that the trial court erred in failing to apply the income shares model prescribed in the Guidelines. To be sure, the appellate materials do not contain a worksheet typically used in that calculation, nor is there any explicit refer-

---

4. We note here Janine's argument that none of the relevant factors has changed since the initial determination, and that the court made a different determination based upon essentially the same circumstances. That is not true. For instance, and this is by no means the only example, J.N. was eleven years old at the time of the first hearing, and the record does not reflect his then—stated preference for custody, if any. At the time of the modification hearing, however, J.N. was fourteen years old and he had consistently expressed a strong desire to live with his father. According to I.C. § 31–17–2–8, "more consideration [is] given to the child's wishes if the child is at least fourteen (14) years of age."

ence to that process in the transcript of the hearing. Janine undertakes an analysis and computes the appropriate amounts that should have resulted from proper application of the model. We cannot help noticing that the figures arrived at through Janine's calculations are substantially the same as those included in the court's support order. Thus, although it did not explicitly indicate that it applied the income share model required by the Guidelines, the trial court's calculations indicate to us that it did so. To remand for the sole purpose of requiring the trial court to explicitly state the obvious would be a meaningless exercise and a waste of judicial resources. There is no error in that regard.

■ In addressing Janine's challenge to the calculation of her support obligation, we note that most of the facts are not in dispute. Both parties agree that the trial court correctly determined that (1) Joseph's weekly adjusted gross income is $1,025.00,[5] (2) Janine's weekly adjusted gross income is $210.00, and (3) the parties have a combined weekly adjusted gross income of $1235.00, which (4) yields a proportional share of the total adjusted gross income of eighty-three percent for Joseph and seventeen percent for Janine.[6] Plugging those figures into the formula provided in the Guidelines yields a weekly child support obligation of $40.00 for Janine. Again, both parties are basically in agreement on that figure. The disagreement arises concerning the effect, if any, of the

disability payments Janine receives on behalf of the children.

The modification order specified, "[Janine] shall assign to [Joseph] all social security disability benefits on behalf of the children. Social Security Disability Benefits received on behalf of the children from [Janine's] account shall be credited toward her support obligation." *Appellant's Appendix* at 33. As we understand it,[7] Janine's contention is that instead of ordering a $40 weekly child support obligation, from which disability benefit payments redirected to Joseph would be deducted upon receipt, the court should have performed that calculation (i.e., support obligation minus disability benefit) and set support at the resultant remainder. The trial court's method was correct.

We note here that Janine's argument assumes that the amount of the weekly disability benefits for the children is greater than or equal to her child support obligation, which is $40.00 per week. We can find no verification of that assumption in the appellate materials. Be that as it may, neither party asserts an argument inconsistent with that assumption, and the precise amount of the weekly benefit is not important for purposes of our decision. The portion of the trial court's order at issue here may be viewed as having two separate components, (1) calculating the weekly support obligation to be $40.00, and (2) determining that any social security benefits received on behalf of the children from Janine's account were credited to-

---

5. Actually, Joseph indicates in his appellate brief that his weekly adjusted gross income is $1,100.00. Apparently, he failed to account for the $75 weekly maintenance payment he was ordered to pay Janine in the dissolution decree. As Janine correctly points out, the maintenance payment should be deducted from Joseph's total in arriving at his weekly adjusted gross income.

6. Joseph represents the proportional shares to be eighty-four percent and sixteen percent. It appears from the appellate materials that Janine's figures are correct, although we observe that the difference between the two is de minimis.

7. Janine argues in this regard, "with her credit for disability payments, [Janine] owes nothing additional in child support." Appellant's Brief at 19

ward Janine's obligation. Although it may be true that the net effect of those two components currently means that Janine's obligation will be met in toto through the disability payments, that will not necessarily always be the case. If there comes a time when the amount of disability social security benefits received on behalf of the children falls below the amount of Janine's obligation, then she will have to make up the difference in some other way. One advantage of the method employed by the trial court here is that it provides flexibility in accommodating a change in the status or amount of the disability benefits. If such were to occur, the parties would not be forced to return to court for recalculation of Janine's obligation. Thus, the formula imposed by the court is applicable regardless of the amount of the disability benefits received on behalf of the children as it relates to Janine's total obligation.

In summary, the trial court's calculation of Janine's child support obligation yielded the correct result, regardless of whether the court explicitly indicated that it was following the statutory Guidelines in arriving at that figure. The modification order fashioned by the court not only imposed the correct obligation, but the formula contained therein provided a flexible framework for addressing any future changes that may occur with respect to the disability benefits aspect of this situation. The modification order was not clearly against the logic and effect of the facts and circumstances before the court and its decision is therefore affirmed. *See Fields v. Fields*, 749 N.E.2d 100.

Judgment affirmed.

BROOK, C.J., and MATTINGLY–MAY, J., concur.