# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 06 2019, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer Fehrenbach Taylor
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Sybil T. Sharvelle
Gregory S. Loyd
Truitt Ray Law
Lafayette, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| G.S., <br> *Appellant-Petitioner,* <br><br> v. <br><br> A.S., <br> *Appellee-Respondent.* | May 6, 2019 <br><br> Court of Appeals Case No. 18A-DR-2625 <br><br> Appeal from the White Circuit Court <br><br> The Honorable Robert W. Thacker, Judge <br><br> Trial Court Cause No. 91C01-0707-DR-81 |

**Robb, Judge.**

# Case Summary and Issues

[1] As part of their 2008 divorce, A.S. ("Mother") and G.S. ("Father") shared joint legal custody of their only child with Mother having primary physical custody. Following an incident at Mother's house in June 2018, Mother was charged with neglect of a dependent and Father filed an emergency motion seeking primary custody and a motion to modify custody. The trial court granted Father temporary primary physical custody and held a hearing on the motion to modify custody. Prior to the hearing, Father filed a motion to continue, motion to compel, and a motion to restrict witnesses, all of which were denied. After the hearing, the trial court entered its order denying Father's motion to modify custody.

[2] Father appeals raising several issues which we restate as: (1) whether the trial court abused its discretion by denying Father's motion for a continuance; (2) whether the trial court erred in denying Father's motion to compel and motion to restrict witnesses; (3) whether the trial court applied the incorrect legal standard in its order; and (4) whether the trial court abused its discretion by denying Father's motion to modify custody. Concluding the trial court applied the correct legal standard in its order and did not abuse its discretion by denying Father's motion to modify custody, motion to continue, motion to compel, or motion to restrict witnesses, we affirm.

# Facts and Procedural History

[3] The facts most favorable to the trial court's judgment are as follows. Mother and Father were married August 27, 2005, and have one minor child of the marriage, B.S. ("Child"), born February 8, 2007. Mother filed a verified petition for a dissolution of marriage in July 2007. After a final hearing in which both parents sought primary physical custody of Child, the trial court entered a decree of dissolution and took the child custody issues under advisement. On April 11, 2008, the trial court entered a final judgment and order granting the parties joint legal custody of Child with Mother having primary physical custody and Father having secondary physical care of Child.

[4] In 2010, the parties entered into a parenting time agreement as to Child's winter break each year. *See* Appellant's Appendix, Volume 2 at 46-47. Since the parties' divorce, Father remarried and has two other children. Mother also has two other children, C.R. and J.S, and became pregnant with her fourth child. Mother had been talking to S.B. for five years via telephone. S.B. is the father of Mother's fourth child. In December 2017, S.B. and his daughter, L.B., moved in with Mother.

[5] At Mother's house, on June 19, 2018, S.B. allegedly tied up J.S. and L.B. with a device used by adults as a sex toy. The children were tied up in separate incidents for disciplinary purposes and no sexual abuse occurred. Although Mother did not tie the children up or assist S.B., she was present during the incidents, and she was arrested and charged with criminal confinement and neglect of a dependent as a result. S.B. was arrested and charged with neglect of a dependent, battery by strangulation, and criminal confinement. J.S., L.B.,

and Child (who was also present when the incident occurred but was not disciplined himself) were interviewed by law enforcement and the Tippecanoe County Department of Child Services ("DCS") the night of the incident. As a result of the incident, Mother submitted to an Informal Adjustment with DCS regarding her daughter, C.R., and has complied with all requests. The Informal Adjustment only involved C.R. because Mother had primary custody of her.

[6] On June 27, 2018, Father filed a Verified Emergency Motion for Change of Custody and For Suspension of Parenting Time and Child Support due to the charges and alleged the underlying events were committed in the presence of Child and Child may have been a victim of the acts. Father argued that "[t]o protect the physical and emotional wellbeing of [Child], it is necessary for [Father] to be awarded primary physical care and custody and [Mother's] parenting time with [Child] be suspended." Appellant's App., Vol. 2 at 50.

[7] The same day, Father also filed a Verified Petition to Modify Dissolution Decree as to Custody, Parenting Time, and Child Support, in which Father asserted that "[t]here has been a substantial change in circumstances since the entry of the Dissolution Decree in that [Mother], on or about June 26, 2018, was charged with criminal confinement and neglect of a dependent." *Id.* at 51. Father also contended that Mother treats Child "inappropriately" and has demonstrated poor judgment with respect to Child, and that Child is older, has half siblings at Mother's and Father's houses, and is well adjusted to Father's community. *Id.* Based on these factors, Father argued it was in Child's best

interest that he have primary physical custody of Child and that Mother's parenting time be suspended or supervised.

[8] The trial court temporarily granted Father's Verified Emergency Motion for Change of Custody and for Suspension of Child Support, ordered the parties to continue to share joint legal custody with Father having temporary primary physical custody of Child and Mother having parenting time. The trial court temporarily suspended Father's child support obligation and scheduled an evidentiary hearing for August 31 on Father's Petition to Modify Dissolution Decree as to Custody, Parenting Time, and Child Support.

[9] One week before the hearing, Father filed a motion to compel Mother to respond to his request for production and requested attorney fees. He also filed a motion to continue the hearing because his former attorney had a family medical emergency and there were outstanding discovery requests. Mother filed an objection to both motions. On August 30, Father filed a Motion to Restrict Witnesses. The trial court denied Father's motions. *See* Transcript, Volume II at 4-5. The trial court held the evidentiary hearing on August 31 and took the matter under advisement. Subsequently, the parties each filed a proposed order. On October 3, the trial court entered its order denying Father's motion to modify custody and found, in pertinent part:

> 7. . . . The Court finds that the child custody modification statute at I.C. 31-17-2-21 and I.C. 31-17-2-8 provides that the Court may not modify child custody unless modification is in the best interest of the child, and there is a substantial change in one or more of the factors the Court may consider under I.C. 31-17-2-8.

The Court finds that [Father] has not carried his burden of proof and has not presented sufficient evidence to prove by a preponderance of the evidence that there is a significant and continuing change of circumstances so as to make the existing Custody Order unreasonable. [Father] has not sufficiently demonstrated that the existing Custody Order is no longer in the child's best interest.

* * *

12. . . . [I]t is clear that [Mother] has been the primary caregiver for [Child], since the entry of the Decree and Custody Order. [Mother] testified that [Child] has always lived with her, and that she has been the one making appointments and taking him to doctor appointments, dentist appointments, eye exams, and other parenting necessities.

* * *

14. [Father] filed his modification of custody based on an incident that occurred in [Mother's] home sometime around June 19, 2018. [Mother] was charged with Neglect of a Dependent and Criminal Confinement. No court proceedings have occurred and the case is still pending and no disposition has been entered.

15. The criminal charge does not allege that [Mother] did anything to the children and is based upon an allegation of failure to protect them. It is alleged that her former boyfriend, [S.B.], tied his daughter [L.B.] and [Mother's child J.S.] up, at separate times, in some sort of device. Dawn Gross the Forensic Investigator stated it was some sort of "sex toy" that caused the hands and feet to be bound and a cord that goes around the person's throat. No pictures of the apparatus were presented to the Court, so the Court has no real way to tell what the device was or how it worked. From the testimony of [Gross] and

Detective Jodi Rohler, of the Tippecanoe County Sheriff's Office, reporting on the interview of the children, this was a one time thing.

16. From the evidence it was clear that [Child] was not injured with this device. [Father] and [Mother] both denied any injury to [Child].

17. [Father] alleges that because of this one incident [Mother] should no longer have primary physical possession/physical custody of [Child] and that [Child] should now live with [Father] and [Mother] should have parenting time and pay child support.

* * *

31. To remove a child from a home he has lived in for eleven years and remove him from the parent that has been his daily caregiver is a most serious consequence. Such a move also removes him from the daily interaction of his siblings that live in the home and with whom he has grown up.

* * *

36. . . . [E]xcept for the incident of June 19, 2018, there would be no grounds to modify custody. According to the evidence presented, [Father] brought this modification petition based solely on the events of June 19, 2018 and for no other presented reason.

Appealed Order at 3-9. The trial court considered the statutory factors provided in Indiana Code section 31-17-2-8 and concluded:

(a.) The [C]hild is now older than when the original custody determination was made, but that alone is not enough to modify custody.

* * *

(c.) The [C]hild is not 14 years old; but the testimony given by [Mother] and [Father] indicates that the [C]hild wants to live with his Mother.

(d.) The [C]hild's interaction and interrelationship with his parents is good. Neither parent testified that the [C]hild has problems with either parent.

(e.) [Mother] testified that [Child] is very close with his sister . . . and that she is missing him very much. . . .

* * *

(g.) [Parents] testified to the drop in [Child's] grades since going to live with [Father]. He has gone from an A/B student to getting C's and D's.

(h.) Neither party presented any evidence of mental or physical health problems of the other party. . . .

(i.) There was no evidence of any domestic abuse in the family. The only allegation was the neglect of [Mother] for failing to protect [Child], although he was not injured and there was no evidence that [Child] was ever tied up in the aforementioned device.

40. . . . [A] modification of custody requires a showing that a "substantial change" has happened that now makes it in the best interest of the child to transfer primary physical possession from one parent to the other.

41. [Mother] recognized that there was a problem, namely the former boyfriend, [S.B.], and rectified the problem by ending her relationship with [him] and having no contact with him. According to the testimony provided, he is not in the home and [Mother] has had no contact with him.

*Id.* at 10-11. The trial court ordered that Child continue to participate in counseling as recommended by the counselor and that Child not have contact with S.B. The trial court denied Father's motion to modify custody, restoring the original 2008 decree with the parties sharing joint legal custody and Mother having primary physical custody. Father now appeals.

# Discussion and Decision

## I. Motion to Continue

[10] The decision to grant or deny a motion to continue is within the sound discretion of the trial court. *J.P. v. G.M.*, 14 N.E.3d 786, 789 (Ind. Ct. App. 2014). This court will reverse only for an abuse of that discretion. *Id.* "An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion." *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*. No abuse of discretion will be found if the moving

party fails to demonstrate he or she was prejudiced by the denial. *Id*. Whether a moving party demonstrated good cause is a fact-specific inquiry which requires us to evaluate the circumstances at the time of the motion and reasons presented to the trial court. *Powers v. Blunck*, 109 N.E.3d 1053, 1055 (Ind. Ct. App. 2018).

[11] Father argues the trial court abused its discretion in denying his motion to continue and that he was unduly prejudiced by the denial. Specifically, he claims that he was prejudiced by the denial because "it did not allow sufficient time for [his] counsel to review the documents and consult her client . . . or to allow [Father] to obtain the names and anticipated testimony of [Mother's] witnesses" before the hearing. Brief of Appellant at 28. In Mother's objection to the motion filed with the court, she argued that the "pivotal matter before the Court is the custody of a minor child. This matter needs to be decided sooner rather than later." Appellant's App., Vol. 2 at 73.

[12] At the hearing, the trial court explained its decision to deny the motion: "[t]his case requires and demands the Court to have an evidentiary hearing to move forward without delay[.]" Tr., Vol. II at 4. The trial court also took the position that the discovery issues did not make a "substantive difference in the presentation of the evidence[.]" *Id*. at 5. The trial court then stated that either party could object to evidence or witnesses when presented and any "ramification of discovery not being completed in a timely or appropriate manner, [would be taken] into account on any kind of objection[.]" *Id*.

[13]     The evidence in the record reveals that Father did not object to any specific evidence or any of Mother's witnesses. Father has failed to demonstrate that he was prejudiced by the denial. Because this case involves the custody of a minor child and the trial court did not believe there were any substantive discovery disputes, we conclude the trial court did not abuse its discretion in denying Father's motion to continue.

## II. Motion to Compel and Motion to Restrict Witnesses

[14]     Father also challenges the trial court's denial of his motion to compel and for attorney fees,[1] as well as his motion to restrict witnesses.

[15]     A trial court has broad discretion in ruling on issues of discovery and this court will interfere only when the appealing party can show an abuse of discretion. *White-Rodgers v. Kindle*, 925 N.E.2d 406, 411 (Ind. Ct. App. 2010). "An abuse of discretion occurs when a trial court reached a conclusion that is against the logic and effect of the circumstances before it." *Id.* The reviewing court determines whether the evidence serves as a rational basis for the trial court's decision, but we cannot reweigh the evidence or assess the credibility of the witnesses. *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 322 (Ind. Ct. App. 2006).

---

[1] Although Father sought to compel discovery and requested attorney fees in the same motion, Father's argument on appeal only addresses the discovery issue. He does not make any argument with respect to the attorney fees and that issue is therefore waived. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning.).

[16]    In his motion to compel, Father sought to compel Mother to respond to his Request for Production.  In denying Father's motion to compel, the trial court explained that it "didn't see that the discovery disputes made a substantive difference in the presentation of the evidence of the case, and if there is some . . . ramification of discovery not being completed in a timely or appropriate manner, [it would] take that into account on any kind of objection[.]"  Tr., Vol. II at 5.  With respect to the motion to restrict witnesses, the trial court explained:

> I understand there's a point to discovery and disclosing witnesses. . . . I just can't imagine what all you folks are trying to interject into what I call a fairly straightforward case about taking care of a child so . . . my experience tells me to move forward. I'm not worried about all of that . . . unless someone is intentionally trying to . . . deceive on one party towards the other party.  So we're going to go forward.

*Id*.  Here, the trial court provided a rational basis for its decision and acted within its discretion in denying Father's motions to compel and restrict witnesses.  The trial court stated that the parties would have the opportunity to object to evidence or witnesses during the proceedings and it would take the discovery issues into account in ruling on any objections.  Father states that his attorney received a copy of the Informal Adjustment after Tanya Fry's testimony on direct, and after all other witnesses had testified, which required his attorney to review the document during the hearing.  However, Father does not raise any issues in his brief that he believed were not adequately covered

during the hearing due to these discovery issues. We cannot conclude the trial court abused its discretion.[2]

# III. Motion to Modify Custody

## A. Standard of Review

[17] Modification of custody is a determination that rests in the sound discretion of the trial court. *In re Marriage of Sutton*, 16 N.E.3d 481, 484 (Ind. Ct. App. 2014). Accordingly, we review the trial court's decision to modify custody for an abuse of this discretion, affording wide latitude and deference to the trial court. *Collyear-Bell v. Bell*, 105 N.E.3d 176, 183 (Ind. Ct. App. 2018).

[18] Here, the trial court entered findings of fact and conclusions thereon in its order denying modification of custody. When reviewing judgments with findings and conclusions, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We do not reweigh the evidence or assess the credibility of the witnesses. *D.C. v. J.A.C.*,

---

[2] Although not framed as an issue in the case, Father argues in his brief that the trial court abused it discretion by directing counsel not to ask Mother questions related to the June 19, 2018 incident that would cause her to plead the Fifth Amendment. He asserts: "The Court should have treated the testimony of the other witnesses regarding the events underlying the criminal allegations against [Mother] as true in light of [her] election to plead the Fifth Amendment and failure to refute those allegations." Br. of Appellant at 26. Father is correct that the "privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness' refusal to testify[,]" *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014), but it is the trial court's role to judge the credibility of the witnesses and weigh the evidence. *D.C. v. J.A.C.*, 977 N.E.2d 951, 954 (Ind. 2002). We will not second guess the trial court in this respect.

977 N.E.2d 951, 954 (Ind. 2012). Instead, we view the evidence most favorably to the judgment. *Id.*

[19] The record does not reflect that either party requested specific findings. When a trial court enters findings *sua sponte*, we review issues covered by the findings with a two-tiered standard of review. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). We first determine whether the evidence supports the findings and then, whether the findings support the judgment. *Id.* Issues not covered by the findings are reviewed under the general judgment standard, in which we can affirm on any legal theory supported by the evidence. *Id.* at 123-24. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

## B. Legal Standard

[20] First, Father argues that the trial court applied an improper legal standard causing its judgment to be erroneous. We disagree. Indiana Code section 31-17-2-21 addresses modification of a child custody order:

> (a) The court may not modify a child custody order unless:
>
> > (1) the modification is in the best interests of the child; and
>
> > (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . .

(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

The relevant factors in section 8 are:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent. . . .

Ind. Code § 31-17-2-8.

[21] As evidence the trial court applied an incorrect legal standard, Father points to the trial court's statement that he failed to prove by a preponderance of the evidence that there is "significant and continuing change of circumstances so as to make the existing Custody Order unreasonable." Appealed Order at 3. This specific language is derived from a previous version of Indiana's child custody modification statute, pursuant to which a court could modify a custody order "only upon a showing of changed circumstances so substantial and continuing as to make the existing order unreasonable." *Wallin v. Wallin*, 668 N.E.2d 259, 260 (Ind. Ct. App. 1996) (citing Ind. Code § 31-1-11.5-22(d)). However, effective July 1, 1994, the Indiana legislature removed the "unreasonable" language and amended the statute allowing a court to modify custody if it is in the child's best interests and there is a substantial change in one or more of the statutory factors. *Id*. "[T]he primary difference between the former and current [child custody modification] statutes is that the former provision focused upon substantially changed 'circumstances', while the latter focuses upon substantial changes in a list of statutory 'factors.'" *Nienaber v. Marriage of Nienaber*, 787 N.E.2d 450, 455 (Ind. Ct. App. 2003).

[22] In *Nienaber*, the mother argued the trial court applied the incorrect legal standard, the pre-amendment standard, in its custody modification order. This court explained that although the trial court's language in the order "parrot[ed]

language from the repealed standard[,]" the modification was not clearly erroneous. *Id.* Instead of focusing on the terminology employed in the order, we evaluated its substance and concluded that the trial court considered the appropriate statutory factors. Ultimately, the trial court's "terminology was outdated, but its decision-making process and the substance of [its] decision comply with current law." *Id.* at 456.

[23] Similarly here, the trial court briefly employed outdated language in its order. However, Father's argument fails to recognize the sentence preceding this outdated language, in which the trial court provided the current legal standard: "The Court finds that the child custody modification statute at I.C. 31-17-2-21 and I.C. 31-17-2-8 provides that the Court may not modify child custody unless modification is in the best interest of the child, and there is a substantial change in one or more of the factors the Court may consider under I.C. 31-17-2-8." Appealed Order at 3. Aware of this standard, the trial court explicitly stated that it considered the statutory factors in Indiana Code section 31-17-2-8 and then applied the first seven factors to the facts.[3] In fact, the trial court's findings with respect to the factors mimic the statutory factors in the exact order. Although the trial court included outdated language in its order, it is clear that the substance of the trial court's order complies with the current child custody

---

[3] The remaining factors in section 8 are not applicable to this case.

modification statute. *Nienaber*, 787 N.E.2d at 456. The trial court applied the correct legal standard.

## B. Findings of Fact[4]

[24] Next, Father contends that "in excess of fifteen paragraphs of the forty-eight enumerated findings are wholly or in part unsupported by the evidence." Br. of Appellant at 29. Again, "[f]indings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Yanoff*, 688 N.E.2d at 1262. Based on our review of the record, there is evidence to support a majority of the trial court's findings. The findings which Father alleges are wholly unsupported by the record do not impact the trial court's conclusion. Father also argues the trial court's order is "devoid of any findings addressing [Child's] mental health diagnosis and the undisputed decline in his mental health since the last custody order in 2008." Br. of Appellant at 26. To the contrary, the trial court heard Father's testimony that Child had been in counseling and was diagnosed with persistent depression disorder, and then ordered Child to continue to participate in counseling sessions and treatment as recommended by his counselor. Although there may be conflicting evidence in

---

[4] Father argues that the trial court's order "negates the Order entered on June 8, 2010, approving the parties' agreement as to the Christmas Break time deviation[.]" Br. of Appellant at 26. However, we note that the trial court's order also includes a finding that "[o]ther than as specifically modified herein, the existing Orders of the Court are hereby reconfirmed and shall reman in full force and effect." Appealed Order at 13.

the record, this does not render the trial court's finding erroneous.[5]  There is evidence to support the trial court's findings.

## C.  Denial of Motion to Modify

[25]  Having concluded the trial court applied the correct legal standard and the evidence supports the findings, we turn to Father's argument that the trial court abused its discretion in denying his motion to modify custody.  To modify a custody order, it must be in the child's best interests and there must have been a substantial change in at least one of the statutory factors.  Ind. Code § 31-17-2-21.  When interpreting section 31-17-2-21, our court has held that all that is required to support custody modification is (1) a finding by the trial court that change would be in the child's best interests, (2) a consideration of the factors listed above, and (3) a finding that there has been a substantial change in one of those factors.  *Wills v. Gregory*, 92 N.E.3d 1133, 1136 (Ind. Ct. App. 2018), *trans. denied*.  A substantial change in any one of the statutory factors is sufficient and a change in circumstances "must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential."  *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1193 (Ind. Ct. App. 2014),

---

[5] Notably, Father points to Dawn Gross' testimony that C.R. told her that "[Child] had been tied up on the bed as well as [J.S.] when she was [at Mother's home] on a different occasion because she wasn't there that night this was all going on[.]"  Tr., Vol. II at 47.  This is the only evidence suggesting Child may have been tied up on a different occasion.  However, the trial court heard this testimony and was in the best position to weigh this evidence.  *D.C.*, 977 N.E.2d at 954.

*trans. denied.* Father bore the burden of demonstrating the existing custody order should be modified. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

[26] Here, the trial court concluded that Father brought his modification petition based solely on the June 19, 2018 incident, for which Mother was charged with Neglect of a Dependent. In reaching this conclusion, the trial court carefully contemplated whether the allegation of a crime, without a conviction, constitutes a "significant change" warranting a change in physical custody of Child. Appealed Order at 8. The trial court recognized and appreciated the serious nature of the accusation but explained that it must look at the "big picture" rather than this one event in the eleven years since the initial custody determination. *Id.* Ultimately, it concluded that "[Mother] recognized that there was a problem, namely [her] former boyfriend, [S.B.], and rectified the problem by ending her relationship with [him] and having no contact with him. According to the testimony provided, he is not in the home and [Mother] has had no contact with him." *Id.* at 11.

[27] Tanya Fry with DCS testified that DCS became involved with the family due to safety concerns over S.B.'s presence in the home. She stated that DCS' "whole case stemmed from the inappropriate discipline" and Mother's failure to intervene. Tr., Vol. II at 143. Fry testified that Mother had been fully compliant with services and DCS' safety concerns had been alleviated. Mother acknowledged that the incident was a lapse in judgment and stated she would be willing to take her children to counseling or anything else that helps. Mother also testified she has not had any contact with S.B. since he was arrested.

[28]     Although it is clear that Mother had a serious lapse in judgment, the trial court found that Mother did not do anything to the children and the problem was Mother's boyfriend. However, the trial court also found that the problem has since been rectified because Mother is no longer in a relationship with S.B. and has not had any contact with him since his arrest. Furthermore, the trial court prohibited Child from direct and indirect contact with S.B. in its order.

[29]     The trial court considered the statutory factors, the incident itself, and the potential impact of a change in custody on Child's relationship with his Mother, siblings, and emotional well-being. In the eleven years since the initial custody determination, Child had been living with his Mother and doing well: he was doing well in extra-curricular activities, had regular contact with Father, and the parties engaged in social activities together. The trial court found that removing Child from his daily caregiver of eleven years is a "most serious consequence." Appealed Order at 7. The trial court considered the statutory factors and evaluated the circumstances in the context of the "whole environment" and determined the incident did not constitute a substantial change warranting a change in custody. *Jarrell*, 5 N.E.3d at 1193.

[30]     As our supreme court has explained, "we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence[.]" *Kirk*, 770 N.E.2d at 307. "For us to conclude that the trial court erred in concluding a modification in custody was [not] in Child's best interests,

we would need to reweigh evidence, view disputed facts in a light unfavorable to the judgment, and place ourselves in the position of the trier of fact, roles that are inappropriate on appeal." *Wills*, 92 N.E.3d at 1142.

# Conclusion

[31] For the foregoing reasons, we conclude the trial court did not abuse its discretion in denying Father's motion to continue, motion to compel, and motion to restrict witnesses. We also conclude applied the correct legal standard in its order and did not abuse its discretion in denying Father's motion to modify custody. Accordingly, we affirm.

[32] Affirmed.

Baker, J., and Najam, J., concur.