## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2018, 11:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas F. Wallace
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Patricia L. Martin
Martin Law Offices, PC
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Marriage of Albertson:

Amanda Albertson,

*Appellant-Petitioner,*

v.

William Albertson,

*Appellee-Respondent.*

September 28, 2018

Court of Appeals Case No.
18A-DR-441

Appeal from the Dekalb Circuit Court

The Honorable Kurt Bentley Grimm, Judge

Trial Court Cause No.
17C01-0903-DR-65

**Bradford, Judge.**

# Case Summary

[1] Amanda Albertson ("Mother") and William Albertson ("Father") are the parents of J.A. and L.A. (collectively, the "Children"). Mother was initially awarded custody of the Children. However, after Mother made a series of unsubstantiated allegations of physical and sexual abuse against Father, Father petitioned for and was granted custody of the Children. Mother was also ordered to pay $13,125.00 of Father's attorney's fees. On appeal, Mother contends that the trial court abused its discretion in modifying the prior custody order, violated her procedural due process rights by considering certain evidence, and abused its discretion by ordering her to pay a portion of Father's attorney's fees. We affirm.

# Facts and Procedural History

[2] Mother and Father were married and are the parents of the Children. Their divorce was finalized on February 18, 2011. Mother was granted custody of the Children on February 12, 2012. After receiving custody, Mother and the Children lived with her parents.

[3] On October 14, 2016, Father was granted expanded, unsupervised parenting time with the Children. Shortly after Father began exercising his unsupervised parenting time, Mother began making allegations of physical and sexual abuse of the Children by Father. All of the allegations were investigated and found to be unsubstantiated.

[4]     In May of 2017, Mother and Father each filed petitions seeking to modify the existing custody and parenting time orders. The trial court conducted a two-day hearing on the parties' petitions on December 14–15, 2017. At the time of the hearing, J.A. and L.A. were eight and six years old, respectively.

[5]     On February 14, 2018, the trial court issued an order modifying custody and awarding custody of the Children to Father. In its order, the trial court found that (1) Father "is a fit father"; (2) Mother "is currently an unfit mother and that she is consciously inflicting on her two boys what is in essence emotional abuse to suit her own goals and objectives"; (3) "modification of custody is in the best interests of [the Children] and … that if such modification does not swiftly transpire irreparable damage will occur, if it has not already, to these two young boys"; and (4) "parenting time with [Mother], if not carefully supervised and controlled, would significantly impair the emotional development" of the Children. Appellant's App. Vol. II, p. 33.

# Discussion and Decision

[6]     On appeal, Mother contends that the trial court abused its discretion in granting Father's request for a modification of custody and in granting custody to Father. In making this contention, Mother argues that the evidence does not support the trial court's determination that a change of custody was in the Children's best interests. Mother also contends that the trial court violated her procedural due process rights by considering certain evidence. Lastly, Mother

contends that the trial court abused its discretion in ordering that she pay $13,125.00 of Father's attorney's fees.

# I. Modification Order

"We review custody modifications for abuse of discretion with a preference for granting latitude and deference to our trial judges in family law matters." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (internal quotation omitted). Where, as here, a trial court has entered findings of fact and conclusions thereon,

> Indiana's appellate courts shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (citations and quotations omitted). "Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by

appellant before there is a basis for reversal." *Kirk*, 770 N.E.2d at 307 (brackets and quotation omitted).

[8] Indiana Code section 31-17-2-21(a) provides that a trial court may modify a child custody order if "(1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 … of this chapter." The factors listed in Indiana Code section 31-17-2-8 include:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
> > (A) the child's parent or parents;
> > (B) the child's sibling; and
> > (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
> > (A) home;
> > (B) school; and
> > (C) community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.
> (9) A designation in a power of attorney of:
> > (A) the child's parent; or
> > (B) a person found to be a de facto custodian of the child.

[9] The trial court found that the evidence presented "demonstrates numerous substantial changes in the factors identified in [Indiana Code section] 31-17-2-8 as illustrated in the Court's findings of fact and the evidence presented shows that a modification of custody in this case would be in the best interests of the children." Appellant's App. Vol. II, p. 36. While the trial court did not specify which factors had substantially changed, we have previously held it was not necessary for the trial court to do so. *See Nienaber v. Marriage of Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003) (noting that we had previously rejected the argument that the court must specifically identify which of the statutory factors had substantially changed). As such, we will affirm the trial court's order modifying custody so long as the evidence supports the trial court's conclusion.

[10] The record reveals that Mother has engaged in a pattern of behavior seemingly aimed at controlling the proceedings in a manner intended to make any interaction between the Children and Father appear stressful and harmful to the Children. Court-Appointed Special Advocate ("CASA") Lee Marki's reports and testimony indicated that Mother would occasionally prod the Children to make statements about Father which appeared to be coached by Mother or maternal grandparents. Throughout CASA Marki's participation in the case, Mother also displayed a reluctance to allow CASA Marki to speak to the Children without her present. In addition, the trial court found that Mother had "done little or nothing to assist" Father in rebuilding a relationship with the Children and had shown a knowing, willful, intentional, and contemptuous

disregard for court orders regarding parenting time. Appellee's App. Vol. II, p. 17.

[11] During the evidentiary hearing, the trial court heard significant testimony relating to Mother's numerous allegations that Father had both physically and sexually abused the Children. Mother's allegations were investigated by DCS "on several occasions and in all cases were deemed unsubstantiated." Appellant's App. Vol. II, p. 31. In addition, no action was taken after the allegations were investigated by the State Police and the Steuben County Sheriff's Department. While one of Mother's witnesses indicated that he believed the allegations simply because they were made, even this witness testified that he found no physical evidence of the claimed abuse. The trial court noted that CASA Marki was of the opinion "that the allegations of sexual abuse have been fabricated by [Mother] with the end goal of alienating Father from his boys and ultimately removing him altogether from his children's lives" and "that Mother's ongoing allegations of sexual abuse are having a damaging and traumatic effect upon the emotional development of the [Children.]" Appellant's App. Vol. II, p. 31.

[12] The trial court also heard evidence that maternal grandmother, with whom Mother and the Children lived, made negative comments to the Children about Father prior to their visitation with Father. During one visit, J.A. told Father that maternal grandmother had told him "that if someone was being mean to him he was supposed to kick them in the nuts" and that Father "was being mean." Father's Ex. 7, p. 13. During another visit, L.A. indicated that he

wanted to go home and "didn't want to see [his] dad anymore" before admitting that "that's what my grandma told me to say." Father's Ex. 7, p. 16. During yet another visit, J.A. hit Father with a fist and stated that Father was being mean and maternal grandmother told him "that he should hit his dad because he was mean." Father's Ex. 7, p. 17. J.A. also said that he did not want to see Father and was going to run away from him "because Grandma said." Father's Ex. 7, p. 17. CASA Marki indicated that she believed "the negative and hurtful suggestions the [Children] state they have been given by [maternal] grandma ... have them, especially [J.A.], extremely confused." Father's Ex. 7, p. 31.

[13] The trial court further noted that CASA Marki recommended that "custody be transferred to [Father] to prevent further emotional damage to the children as well as their relationship with their Father." Appellant's App. Vol. II, p. 31. CASA Marki also recommended that the trial court consider a mental health evaluation for Mother. The trial court found CASA Marki's opinions to be persuasive and correct when considered in light of the evidence coupled with "the Court's own observations as to presentment and demeanor of the witnesses." Appellant's App. Vol. II, p. 32.

[14] Based on the above-discussed evidence, the trial court found that the allegations of sexual and physical abuse by Father were false and were the result of fabrication by Mother. The trial court further found that in fabricating allegations of sexual abuse of the Children by Father, Mother "has engaged in a consistent pattern of conduct designed to alienate [Father] from [the Children],

and the Court further finds that the conduct of [Mother] is currently significantly impairing the emotional development of [the Children] and will continue to do so if there is not intervention to accomplish cessation of the conduct." Appellant's App. Vol. II, p. 32. For these reasons, the trial court concluded that a change in custody was in the Children's best interests. The trial court acknowledged that the change in custody would likely have a temporary negative affect on the Children in that they would have to change schools, but determined that the short-term negative impact was outweighed by the Children's other interests.

[15] Upon review, we conclude that the trial court's findings and conclusions are supported by the record. As such, the trial court did not abuse its discretion in granting Father's request for a modification of custody or in awarding custody to Father.

## II. Procedural Due Process

[16] Mother next contends that the trial court violated her procedural due process rights by considering reports filed by CASA Marki after the close of the evidence. Mother's contention is perplexing because the trial court's order explicitly stated that the trial court did not consider the reports in question in reaching its decision. Specifically, the trial court stated the following:

> The Court would note that subsequent to the close of the evidence the Court received additional Department of Child Services reports filed by CASA volunteer Lee Marki. These reports relate to numerous additional claims of sexual abuse

being perpetrated by the father against his children. The reports indicate that all claims as they relate to the father were unsubstantiated and that the Department of Child Services did substantiate as against the mother Amanda Albertson for emotional abuse of her children. The reports indicate that the Department of Child Services has offered a plan of informal adjustment to the mother. These reports, while filed with the court, were not considered by the Court in reaching its decision as herein announced, and in fact this decision was already in rough draft form at the time the Court received these reports and the only impact upon this decision was the addition of this footnote and the dealing with the subsequent motions generated by this filing.

Appellant's App. Vol. II, p. 31. Later in its order, the trial court again reiterated that it "did not consider the CASA filing in question in rendering this decision." Appellant's App. Vol. II, p. 39. Given that the trial court's explicit statements that it did not consider the reports in question, we conclude that Mother's claim is without merit.

# III. Attorney's Fees

[17] In reviewing a trial court's award of attorney's fees, we apply an abuse of discretion standard. A trial court has wide discretion in awarding attorney's fees. We will reverse such an award only if the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. The trial court may look at the responsibility of the parties in incurring the attorney's fees. Furthermore, the trial judge possesses personal expertise that he or she may use when determining reasonable attorney's fees.

*Mason v. Mason*, 775 N.E.2d 706, 711 (Ind. Ct. App. 2002) (internal citations omitted).

[18] In awarding attorney's fees, the trial court found as follows:

> Because the Court has found that the issues presented arose due to the deliberate fabrication of false accusations against [Father] by [Mother], designed to thwart and prevent [Father]'s parenting time with his children, the Court finds that an award of attorney's fees is appropriate in this case. [Mother] shall pay to [Father] the amount of $13,125.00 towards [Father]'s attorney's fees in this matter. This attorney fee amount shall be a judgment as against [Mother] in favor of [Father].

Appellant's App. Vol. II, p. 38.

[19] The parties filed competing requests for attorney's fees. Father's request indicated that he owed $17,259.88 in fees. Mother's request indicated that she owed $39,549.60 in fees. Mother challenges the trial court's award of attorney's fees to Father, claiming that the trial court failed to hold a hearing on her ability to pay.

[20] The Indiana Supreme Court has noted that in determining an award of attorney's fees, the trial court shall consider the "resources of the parties, their respective economic circumstances, and their ability to engage in gainful employment and earn adequate income." *Masters v. Masters*, 43 N.E.3d 570, 576 n.8 (Ind. 2015). A trial court may also consider factors bearing on reasonableness including, for example, "which party initiated the action, whether fees and expenses were incurred due to a party's misconduct, and the

ability of the party to pay." *Id*. at n.8. Thus, contrary to Mother's claim, the trial court could, but was not required to, consider her ability to pay when entering the award of attorney's fees for Father. *See id.* at n.8 (providing that the trial court "may" consider the ability of a party to pay).

[21] The record reveals that the trial court considered the parties' economic circumstances and employment potential. During the hearing, the parties presented evidence relating to their respective employment and income. The trial court also considered that most, if not all, of Father's fees were incurred because of Mother's behavior. Again, the trial court noted during the proceedings that Mother demonstrated a knowing, willful, intentional, and contemptuous disregard for court orders. The trial court also noted Mother's decision to levy numerous false accusations of physical and sexual abuse against Father, all of which had to be investigated and defended by Father. Mother's decision to make these repeated false accusations amounted to misconduct and necessitated further proceedings. As such, we cannot say that the trial court abused its discretion in ordering that Mother pay $13,125.00 of Father's attorney's fees.

# Conclusion

[22] In sum, the trial court did not abuse its discretion in modifying the custody award to grant custody of the Children to Father or in ordering Mother to pay $13,125.00 of Father's attorney's fees. The trial court also did not violate

Mother's procedural due process rights as it explicitly stated that it did not consider the challenged evidence.

[23] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.