**In re The PATERNITY OF S.G.H.**

**C.M., Appellant–Respondent,**

**v.**

**D.M., Appellee–Petitioner.**

**No. 10A01–0902–JV–82.**

Court of Appeals of Indiana.

Sept. 30, 2009.

Bryan Lee Ciyou, Ciyou & Dixon, P.C.,
Indianapolis, IN, Attorney for Appellant.

## OPINION

FRIEDLANDER, Judge.

C.M. (Mother) appeals a modification order issued by the trial court regarding child support and summer parenting time. Mother presents the following restated issues for review:

1. Did the trial court err by granting D.M. (Father) an abatement of child support during his summer parenting time?

2. Did the trial court improperly treat Father's biannual windfall bonus in terms of a modification of child support?

We reverse and remand.

Mother and Father had a daughter together, and Father's paternity was subsequently established in November 1997. Father was initially ordered to pay $98.00 per week in child support. Thereafter, his support obligation was modified to $70.00 pursuant to an agreed entry, effective January 27, 1999. Support remained at this amount until S.G.H. reached the age of eleven.

On September 22, 2007, Mother filed a petition to modify child support. Following a hearing on Mother's petition, as well as on other pending matters, the trial court entered a modification order on February 28, 2008 (the 2008 Order). The court modified Father's child support obligation to $131.00 per week. The 2008 Order further provided as follows: "In addition to the child support provided above, Father shall report any bonus received from his employer to the Court within 15 days of its receipt. The Court will recalculate support at that time based upon the bonus and indicated [sic] the amount to be paid to Mother from bonus." *Appendix* at 13.

The 2008 Order created confusion among the parties and generated substantial motion practice from both parties. In short, Father understood the notice provision in the 2008 Order to apply only to windfall bonuses that he received in varying amounts about every two years,[1] not to his regular semiannual bonuses that averaged about $20,000 each, which he believed were already factored into the $131.00 per week support order. Mother, on the other hand, took the position that she was entitled to notice of every bonus and recalculation of support after each bonus. On August 25, 2008, Mother filed a Verified Petition in the Alternative to Either Award Additional Child Support on the Basis of Bonuses Received by Father or to Modify Child Support. Thereafter, on October 1, 2008, Father filed a Petition to Modify Summer Parenting Time Schedule.

The trial court heard all pending matters on December 15, 2008. On January 15, 2009, the trial court ordered as follows:

1. That in regards to the Father's bonus payments, it was the Court's

---

1. Father received a windfall bonus of $24,000.00 in October 2008.

intent with respect to the last order to require the Father to report any windfall bonus within fifteen (15) days of its receipt. *Furthermore, if such payment would result in a twenty percent (20%) change in the Father's child support obligation, any such difference shall be made payable from said bonus.* However, it was not the Court's intent to require the father to report his two (2) annual bonus payments as received and payable in January and July.

2. After further consideration of the arguments of the parties and the fact that they have difficulty in communicating concerning such matters, the Court believes that the Father should report the amount of each specific bonus within fifteen (15) days of receipt to the Mother. However, the Court wishes to emphasize that the previous increase in Father's child support obligation took into consideration the receipt of the two (2) annual bonus payments received in January and July, customarily in the sum of approximately twenty thousand dollars ($20,-000.00) each or an annual total of forty thousand dollars ($40,000.00). Therefore, unless the combined total of these two (2) bonus payments do not exceed the annual sum of forty thousand dollars ($40,000.00) no further child support modification is warranted as the bonuses have been included in the computation of his current child support obligation.

3. That [Father's] Petition to Modify Summer Parenting Time Schedule is hereby granted as set forth in said petition. . . .

4. *That the Father's child support shall be abated for his summer parenting time pursuant to the Indiana Parenting Time Guidelines.*

*Appendix* at 8–9 (emphases supplied). On appeal, Mother challenges the two portions of the 2009 Order highlighted above.

■■■ Before reaching the merits, we initially observe that Father has not filed an appellate brief in this case. "Accordingly, we do not undertake the burden of developing arguments for the appellee because that is appellee's duty." *Maser v. Hicks,* 809 N.E.2d 429, 432 (Ind.Ct.App. 2004). When an appellee does not file a brief, we generally apply a less stringent standard of review and may reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *Maser v. Hicks,* 809 N.E.2d 429. "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* at 432 (quoting *Parkhurst v. Van Winkle,* 786 N.E.2d 1159, 1160 (Ind.Ct.App.2003)).

**1.**

■■■ Mother argues that the trial court erred when it ordered Father's child support obligation to abate during extended summer parenting time. She claims this is particularly true in light of the fact Father had already received a parenting time credit based upon 110 overnights, as reflected on the court's child support obligation worksheet. Mother has established prima facie error in this regard.

In *Naville v. Naville,* 818 N.E.2d 552 (Ind.Ct.App.2004), we held that the trial court improperly reduced the father's child support obligation by applying a parenting time credit while also leaving in place a fifty percent abatement for periods of extended visitation. We explained:

Under the previous Child Support Guidelines, a non-custodial parent received a ten percent "visitation credit" and a fifty percent abatement of child support during long periods of visitation. The new guidelines dispense with those

credits in favor of the parenting time credit, and the trial court erred by awarding James the parenting time credit while leaving in place the fifty percent abatement he received pursuant to the outdated guidelines. *Id.* at 557. The trial court similarly erred in the instant case. Therefore, we reverse and direct the trial court on remand to strike paragraph 4 of the 2009 Order.

#### 2.

■ Mother also argues that the trial court erred by effectively excluding Father's semi-annual windfall bonuses under the total income approach taken by the Indiana Child Support Guidelines (the Guidelines). She claims that the 2009 Order improperly applies a modification standard to these bonuses by requiring a twenty percent change in Father's support obligation before awarding any portion of the bonus as child support. *See* Ind.Code Ann. § 31–14–11–8 (West, PREMISE through 2009 Public Laws approved and effective through 4/20/2009).

■ Under the Guidelines, support calculations are made utilizing the income shares model, which apportions the cost of children between the parents according to their means. *Nienaber v. Marriage of Nienaber*, 787 N.E.2d 450 (Ind.Ct.App. 2003). "This approach is based on the premise that children should receive the same portion of parental income … that they would have received if the family had remained intact." *Id.* at 456.

Under the income shares model bonuses are includable despite being irregular or nonguaranteed. *See* Ind. Child Guideline 3(A) (defining weekly gross income).

When the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons. When the court determines that it is appropriate to include irregular income, *an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis … rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.*

Child Supp. G. 3(A) cmt. 2(b) (emphasis supplied).

Our review of the record in this case reveals that the trial court clearly intended to include Father's windfall bonuses in the determination of the child support obligation,[2] though the amount of additional child support owed would not be determined until after each such bonus was received by Father. Inconsistent with this intent, however, the trial court stated in its 2009 Order, "if such payment would result in a twenty percent (20%) change in the Father's child support obligation, any such difference shall be made payable from said bonus." *Appendix* at 8. We agree with Mother that application of the modification standard is improper in this context. The trial court was not dealing with a modification of child support, as addressed in I.C. § 31–14–11–8. Rather, pursuant to the 2008 Order, the court was simply being asked by the parties to calculate the amount of support due as a result of the windfall bonus received by Father in Octo-

---

**2.** To be sure, the trial court neither expressed a contrary intent in the 2008 Order nor explained why such irregular income should not be included. Rather, as set forth in the facts above, the court expressly indicated in the 2008 Order that whenever Father received such a bonus, the court would "recalculate support at that time based upon the bonus and indicate[ ] the amount to be paid to Mother from bonus." *Appendix* at 13.

ber 2008.[3] This is an existing obligation of Father's regardless of the percentage change it affects in his total child support obligation.

We reverse the trial court's order to the extent it requires a twenty percent change in the support obligation before awarding a portion of the windfall bonus as child support. On remand, the trial court shall calculate the appropriate amount of support due as a result of the recent windfall bonus. While ultimately within the trial court's discretion, we observe that application of one of the methods suggested in the Guidelines may be helpful in this regard.[4]

Judgment reversed and remanded.

RILEY, J., concurs.

BAKER, C.J., dissents with separate opinion.

BAKER, Chief Judge, dissenting in part.

Although I concur with the result reached by the majority on the abatement issue, I respectfully dissent from its conclusion regarding the semiannual windfall bonuses. I acknowledge the commentary following Child Support Guideline 3(A):

  b. Overtime, Commissions, Bonuses and Other Forms of Irregular Income.

There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive.

Each of the above items is sensitive to downturns in the economy. The fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy. Further, it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on that higher level of earnings. Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled.

When the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons. When the court de-

---

3. Father testified at the recent hearing that he believed he was obligated by the 2008 Order to pay "a chunk" of the windfall bonus toward child support. *Transcript* at 40. The amount, however, was still to be determined by the trial court.

4. We agree with the dissent that it was not feasible for the trial court to predict the amount of future windfall bonuses with any accuracy at the time it issued the 2008 Order. This fact, however, does not necessitate exclusion of this irregular income from the determination of Father's child support obligation. Precisely because bonuses like this are irregular, particularly in amount, the Guidelines provide the following example: "One method

of treating irregular income is to determine the ratio of the basic child support obligation (line 4 of the worksheet) to the combined weekly adjusted income (line 3 of the worksheet) and apply this ratio to the irregular income during a fixed period." Child Supp. G. 3(A) cmt. 2(b). In other words, this example suggests that Father be ordered to pay a fixed percentage of the windfall bonus in child support, with said percentage based upon the calculation set out in the Guidelines. Such a method, unlike the one suggested by the dissent and ultimately applied by the trial court in the 2009 Order, would not require the parties to seek modification of the weekly support obligation virtually on a yearly basis.

termines that it is appropriate to include irregular income, an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.

\* \* \*

Judges and practitioners should be innovative in finding ways to include income that would have benefited the family had it remained intact, but be receptive to deviations where reasons justify them....

Child Supp. G. 3(A) cmt. 2(b). I believe that this provision was intended to apply to income such as Father's regular semiannual bonuses. That type of income is not guaranteed but is relatively dependable and the parties are able to predict the amount of that income with sufficient accuracy. Here, for example, Father's regular semiannual bonuses averaged approximately $20,000 apiece. Under these circumstances, it makes sense to apply the above tenets and fold the income into Father's child support obligation, as the trial court did.

The windfall bonuses, on the other hand, occur non-regularly—approximately every two years—and in varying amounts. I do not believe that it would have been feasible for the trial court to have attempted to predict the amount of future windfall bonuses with any accuracy; therefore, I believe that the trial court was correct to forego the inclusion of those bonuses in its calculation of Father's child support.

Furthermore, in the event that Father does receive these bonuses in the future and Mother would like them to be taken into account in a recalculation of Father's child support obligation, she would, indeed, be seeking a modification of the child support order and be bound to establish a 20% change before she is entitled to that modification. I.C. § 31–14–11–8(2). I believe that the trial court crafted a clever order that would have spared Mother the expense of drafting and filing a petition to modify, and I believe that rather than reversing on this issue, we should be applauding the trial court for following the Guidelines' recommendation that courts attempt to be innovative when possible. Therefore, I dissent from the result reached by the majority on the issue of the windfall bonuses. In all other respects, I concur in full.