## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 23 2020, 8:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Alexander N. Moseley
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Daun A. Weliever
Neal Bowling
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Natalie Stoops, <br> *Appellant,* <br><br> v. <br><br> Justin T. Fowler, <br> *Appellee.* | December 23, 2020 <br><br> Court of Appeals Case No. 20A-DC-1009 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David J. Dreyer, Judge <br> The Honorable Patrick Murphy, Magistrate <br><br> Trial Court Cause No. 49D10-1803-DC-8620 |

**Pyle, Judge.**

# Statement of the Case

Natalie Stoops ("Mother") appeals the trial court's order modifying custody of the parties' two young children in favor of Justin Fowler ("Father"). Concluding that the trial court did not abuse its discretion, we affirm the trial court's judgment.

We affirm.

# Issue

> Whether the trial court abused its discretion in modifying custody of the parties' two young children in favor of Father.

# Facts

Mother and Father, who were married in November 2012, are the parents of daughter, E.M.F. ("Daughter"), who was born in November 2014, and son, E.J.F. ("Son") (collectively "the Children"), who was born in October 2016. Father filed a petition to dissolve the parties' marriage in March 2018. The trial court issued its decree of dissolution in October 2018.

The dissolution decree incorporated the parties' mediated settlement agreement, wherein the parties agreed to share joint legal custody of the Children. The parties also agreed that Mother would have primary physical custody of the Children, subject to Father's parenting time in accordance with the Indiana Parenting Time Guidelines. The settlement agreement further provided that "[a]ll holidays and special days shall be discussed and agreed upon by the

parties. In the event of a disagreement, the Indiana Parenting Time Guidelines shall be applied." (App. Vol. 2 at 21).

[5] Just two months later, in December 2018, Mother took an ill Daughter to the emergency room at Riley Children's Hospital. Father arrived at the hospital shortly after Daughter was scheduled to be released and planned to take her and Son to his home because it was his parenting time. Mother became angry because she wanted to take Daughter to her home. As Father was bending down to help Daughter put on her coat and shoes, Mother physically attacked Father. Specifically, Mother grabbed Father's ears and dug her fingernails into the back of them. Mother then attempted to kick Father in the groin. As Father moved Daughter out of the way of the altercation, Mother grabbed his ears two more times, dug her fingernails into them, and twisted them. Mother was aware that Father has an implant in his left ear due to damage from his childhood and his military service. This physical altercation, which took place in the presence of the children, caused Father pain as well as lacerations and abrasions on both of his ears. Father sought medical treatment at a nearby hospital and received a shot to prevent an infection in the cartilage of his ears. As a result of the altercation, the State charged Mother with Level 6 felony domestic battery committed in the presence of a child less than sixteen years old.

[6] Shortly after the altercation at the hospital, Mother confronted Father on the front porch of his house. During the confrontation, which occurred in the Children's presence, Mother called Father "the biggest fucking pussy that ever

lived" because he called the police after she had attacked him at the hospital. (Ex. 1). Mother also told Father to "squat and piss[.]" (Ex. 1).

[7] Two months later, Father noticed a large bite mark on Son's forearm. Mother admitted that she had bitten Son to punish him for biting Daughter. Father contacted the Department of Child Services to report the bite because, according to Father, "a parent should not be biting [her child] enough that [the other parent] can count every single tooth mark." (Tr. Vol. 2 at 15).

[8] On Easter 2019, Father and the Children had lunch at a restaurant with Father's parents. Father let Mother know that, because of a delay at the restaurant, Father would be transferring the Children to her fifteen minutes late. Mother, who was angry that the Children would be late, contacted the police. When Father returned home to transfer the Children to Mother, she was waiting for Father and the Children with the police.

[9] In April 2019, Father sent an email to Mother advising her that, pursuant to the parenting time guidelines, he was planning a vacation with the Children from June 28, 2019 through July 6, 2019. Mother responded, "[n]o[,] you ask[ed] for a week in [M]ay." (Ex. Vol. at 12) Father explained that, pursuant to the parenting time guidelines, Father was entitled to four non-consecutive weeks of parenting time with a sixty-day notice. Mother told Father that she was denying his request because she wanted to take the Children to her company picnic during that week. Father ultimately selected a different week for the

vacation because other family members were going on the trip and they had to make reservations.

[10] In September 2019, Mother was convicted in a bench trial of Level 6 felony domestic battery in the presence of a child less than sixteen years old based on the incident at the hospital. The trial court sentenced her to one-hundred and eighty (180) days in the county jail with one-hundred and seventy-eight days (178) suspended to probation. The terms of Mother's probation required her to attend anger management counseling and parenting classes.

[11] In October 2019, Father had a conflict with Mother regarding parenting time on Halloween. Pursuant to the parenting time guidelines, it was Father's year to have the Children on Halloween. However, Mother told Father that she planned to take the Children out of town. Father decided not to attempt to pick up the children on Halloween because he "did not want [the Children] drawn into the middle of an argument." (Tr. Vol. 2 at 20).

[12] Lastly, two months before Christmas 2019, Father emailed Mother that, in accordance with the parenting time guidelines, it was his year to have the Children for the first week of the Christmas holiday. Father told Mother that he would be taking the Children from December 22 through December 29 and that Mother could have the Children from 9 a.m. until 8 p.m. on Christmas day. Mother responded that she "w[ould] not allow [him] to take [the Children's] Christmas parties with [Mother's] aunts and uncles and all their cousins on [Mother's] side of the family." (Ex. Vol. at 15). Mother stated that

she was "standing up to [Father] and telling [him] no on this vacation time." (Ex. Vol. at 15). Mother also told Father that he might have "taken [her] job because of the lies [he] told in court and [he] caused [her] to have a felony" but that she would "not allow [him] to ruin the holidays for [her] kids." (Ex. Vol. at 15). Father took the Children from December 27 through January 3.

[13] In December 2019, Father filed a petition to modify child custody, parenting time, and child support. Mother filed a motion to modify child support wherein she argued that, based on her recent suspension without pay from her job, there had been a substantial change in circumstances that would warrant a modification of support. The trial court held a hearing on both parents' motions in February 2020 and heard testimony about the facts as set forth above.

[14] Also at the hearing, Father testified that Mother had not consulted with him about medical decisions concerning the Children and that he often learned about the Children's medical visits when he received emails from his medical insurer. According to Father, he had asked Mother for information about the Children's dental provider, but Mother had not responded to Father's request. Father also testified that Daughter would be starting school in the Fall and that he had attempted to discuss with Mother where the Daughter would be attending school. Mother told Father that she had not decided yet where the Daughter would attend school. Mother had also told Father that she had "full custody" of the Children and could "basically do whatever she please[d]." (Tr. Vol. 2 at 6). In addition, Father told the trial court that he likes to talk to the

Children every other day when they are with Mother and that when he has attempted to telephone them in the evening, Mother has refused to answer the telephone "on a fairly regular basis." (Tr. Vol. 2 at 25). Father asked the trial court to award him primary physical custody of the Children and to order all exchanges of the Children between Mother and Father to occur at the Children's daycare facility.

[15] Mother testified that she and Father "should share holidays equally" and that she had not withheld medical or educational information from Father. (Tr. Vol. 2 at 52). According to Mother, she had simply been trying to find "a school that [would be] very good for [the Children] to go to." (Tr. Vol. 2 at 67). Mother further testified that Father "ha[d] a tendency to make [her] angry" and that the Children were "very angry [and] depressed" when they returned from visits with Father. (Tr. Vol. 2 at 54, 61). When asked what she had learned in anger management counseling, Mother initially responded that that was "patient and client information." (Tr. Vol. 2 at 65). She later responded that she had learned "[h]ow to deal with [Father]" when they exchanged the Children. (Tr. Vol. 2 at 66). Mother also testified that she had been suspended from work "[d]ue to the felony charges [that Father had] put on [her]." (Tr. Vol. 2 at 68). In addition, Mother testified that she would follow the trial court's order and parenting time guidelines in the future.

[16] In April 2020, the trial court issued an order modifying custody of the Children in favor of Father. Mother now appeals.

# Decision

Mother argues that the trial court abused its discretion in modifying custody in favor of Father. We review custody modifications only for an abuse of discretion. *McDaniel v. McDaniel*, 150 N.E.3d 282, 288 (Ind. Ct. App. 2020), *trans denied*. A trial court's custody determination is afforded considerable deference on appeal as it is the trial court that sees the parties, observes their conduct and demeanor, and hears their testimony. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945-46 (Ind. Ct. App. 2006). Thus, on review, we will not reweigh the evidence, judge the credibility of witnesses, or substitute our judgment for that of the trial court. *Id.* at 946. We will reverse the trial court's custody determination only if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Id*. "'[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *McDaniel*, 150 N.E.3d at 288 (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

INDIANA CODE § 31-17-2-21 provides that a trial court may not modify an existing child custody order unless: (1) the modification is in the best interests of the child; and (2) there has been a substantial change in one or more of the statutory factors that are outlined in INDIANA CODE § 31-17-2-8. These factors are:

> (1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian[.]

IND. CODE § 31-17-2-8. In interpreting Indiana Code § 31-17-2-21, this Court has held that "'all that is required to support modification of custody . . . is a finding that a change would be in the child's best interest, a consideration of the factors listed in I.C. § 31-17-2-8, and a finding that there has been a substantial change in one of those factors.'" *McDaniel*, 150 N.E.3d at 289 (quoting *Nienaber v. Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003)).

[19] We further note that neither party requested special findings under Indiana Trial Rule 52(A) and that the trial court entered its findings sua sponte. As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings and whether the findings support the judgment. *McDaniel*, 150 N.E.3d at 289. We review any remaining issues under the general judgment standard and will affirm the judgment if it can be sustained on any legal theory consistent with the evidence. *Id.* "'We may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court.'" *McDaniel*, 150 N.E.3d at 289 (quoting *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013)). Clear error occurs when our review of the evidence most favorable to the trial court's judgment leaves us firmly convinced that a mistake has been made. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016).

[20] Here, the trial court found that there was a substantial change in INDIANA CODE § 31-17-2-8(7) because there was evidence of a pattern of domestic or family violence by Mother. Mother contends that "the trial court's determination that there was a 'substantial change in I.C. 31-17-2-8(7)' is clearly erroneous because the only reasonable inference that can be gleaned from the findings of fact and record evidence is that Mother's actions were isolated acts of misconduct." (Mother's Br. 14).

[21] We disagree with Mother's characterization of the evidence. Our review of the record reveals that Mother physically attacked Father at the hospital in front of the Children. Mother's physical attack against Father caused pain and

lacerations to Father, required him to seek medical care, and resulted in a felony domestic battery conviction. Shortly thereafter, Mother verbally attacked Father on his front porch in front of the Children. Mother then bit Son on his forearm and left indentations of "every single tooth mark." (Tr. Vol. 2 at 15). This evidence supports the trial court's finding that there was a substantial change in INDIANA CODE § 31-17-2-8(7) because there was evidence of a pattern of domestic or family violence by Mother. Mother's argument is a request that we reweigh the evidence, which we cannot do. *See Kondamuri*, 852 N.E.2d at 946.

[22] The trial court also found that a modification of custody was in the Children's best interests. Mother argues that "the evidence and findings fail to support [this] determination[.]" (Mother's Br. 17). Again, we disagree.

[23] Our review of the record reveals that Mother interfered with and/or failed to accommodate Father's parenting time for vacations and holidays, including a planned summer vacation with Father's family, Halloween, and Christmas. Mother's interference and/or failure to accommodate Father's parenting time negatively affected Father's ability to exercise parenting time with the Children. We agree with Father that Mother's interference with his parenting time was "harmful to the [C]hildren in that it undermine[d] their relationship with him." (Father's Br. 14-15). The record further reveals that Mother was increasingly making decisions regarding the Children, including medical, dental, and educational decisions, without advising and/or consulting with Father. The totality of this evidence supports the trial court's determination that a

modification of custody was in the Children's best interests. *See McDaniel*, 150 N.E.3d at 290 (concluding that the trial court's findings supported its judgment that a modification of custody was in the child's best interests). Mother's argument is an invitation for us to judge the credibility of witnesses and reweigh the evidence, which we cannot do. *See Kondamuri*, 852 N.E.2d at 946. The trial court did not abuse its discretion in modifying custody of the parties' two young children in favor of Father.

[24] Affirmed.

Vaidik, J., and Brown, J., concur.